# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                            Case No. 18-CR-142

**JOE TURNER**
        **Defendant.**

## DECISION AND ORDER

On March 12, 2020, I sentenced defendant Joe Turner to 72 months in prison, followed by three years of supervised release, on his guilty pleas to drug and firearm charges. Defendant had been detained following his arrest on June 13, 2018; the BOP accordingly lists his release date as July 23, 2023, accounting for this pre-trial sentence credit.

Shortly after sentencing, defendant's eight-year-old daughter's mother was murdered. Defendant now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, I grant his motion and reduce the prison sentence to time served. In order to ensure adequate monitoring and protection of the public, I will increase the supervised release term from three years to five and add a period of home confinement as a condition of supervision.

## I. FACTS AND BACKGROUND

The government's investigation revealed that defendant assisted a man named Joseph Copeland in his drug trafficking activities by riding around with Copeland and selling drugs from Copeland's drug houses. One source reported that defendant operated a drug house in Milwaukee, in which the source observed defendant in possession of large quantities of heroin

and cocaine, as well as a black semi-automatic handgun. Another source reported that s/he purchased heroin and cocaine from defendant for about six months beginning in October 2017. A cooperating defendant reported that he began purchasing cocaine from Copeland and defendant years earlier, that he saw defendant with significant quantities of cocaine, and that he also observed defendant in possession of firearms.

On June 12, 2018, officers executed a search warrant at defendant's residence, recovering 56 grams of heroin packaged for distribution, as well as a loaded 9mm pistol under the mattress in his bedroom. During a post-arrest interview, defendant admitted that he knew the gun was under the mattress but stated that it belonged to his girlfriend. He denied any knowledge of the heroin and denied dealing drugs. He admitted knowing Copeland but claimed that he had not seen him in over a month.

Defendant later accepted responsibility for the contraband seized from the residence, pleading guilty to possession of heroin with intent to distribute, 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c). In his statement to the pre-sentence report ("PSR") writer, defendant indicated that his involvement stemmed from his own drug use. He indicated that he was able to obtain easy access to drugs through his relationship with Copeland, a childhood friend from the neighborhood. He reiterated that the gun belonged to his girlfriend but acknowledged that he knew it was there, that he possessed it, and that he considered it a protection weapon, with his drug activities increasing the need for protection.

The PSR reported a modest prior record, consisting mostly of marijuana possession cases, as well as a misdemeanor carrying a concealed weapon case. He had not previously served prison time. The PSR further reported that he had two children, ages 14 and eight, both

of whom then lived with their mothers. While he owed significant support arrears, he was involved in their lives prior to his detention.

The PSR adopted an advisory sentencing guideline range of 70-87 months on the drug count (offense level 25, criminal history category III), and the statute required 60 months consecutive on the firearm count. Given the bad combination of drugs and guns, and defendant's apparent involvement in this activity over a significant period of time, I agreed that prison was needed to provide just punishment. I also concluded that a prison term was needed to deter defendant, as his previous jail and probationary sentences for offenses involving drugs and guns had not stopped him.

For several reasons, however, I found a term well below the guideline range sufficient. First, the record contained no evidence that defendant used, attempted to use, or threatened to use the gun. I also considered the role of his own substance abuse in his conduct. His detention in this matter forced him to get clean, and he expressed a desire to participate in substance abuse treatment.

Second, his prior record consisted mostly of marijuana possession cases. He had no history of violence, and he had never served prison time before. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

Finally, in considering the need to protect the public, I took into account the lengthy sentence required by the § 924(c) count alone. See Dean v. United States, 137 S. Ct. 1170,

3

1177 (2017) (holding that a sentencing court may consider the mandatory minimum under §924(c) when calculating an appropriate sentence for the predicate offense).

Under all the circumstances, I found a total sentence of 72 months sufficient but not greater than necessary to satisfy the purposes of sentencing. I declined to impose a sentence at the minimum, as requested by the defense, finding that insufficient to acknowledge the scope of his drug dealing. I found that a total 6-year term would provide a sufficient punishment to acknowledge the drug dealing, in addition to the gun possession, while also factoring in the mitigating circumstances discussed above. I imposed a three year term of supervised release to follow, with a drug testing and treatment condition.

## II.  DISCUSSION

### A.  Compassionate Release Standards

Pursuant to the First Step Act of 2018, the district may grant what is commonly known as "compassionate release." The statute provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A)(i).[1]

The statute does not define the term "extraordinary and compelling reasons." Rather, Congress delegated that task to the Sentencing Commission. See 28 U.S.C. § 994(t). The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or

---

[1] The statutory language indicating the defendant must first request compassionate release from the warden before applying to the court is often referred to as the statute's "exhaustion" requirement. See United States v. Scott, No. 17-CR-156, 2020 U.S. Dist. LEXIS 85554, at *9-16 (E.D. Wis. May 15, 2020) (discussing this provision).

5

> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1; see Scott, 2020 U.S. Dist. LEXIS 85554, at *17-18 (indicating that, because the Commission has not updated the policy statement since the passage of the First Step Act, district courts may exercise their discretion in deciding whether other reasons might warrant a sentence reduction under § 3582(c)(1)(A); United States v. Ramirez, No. 17-10328, 2020 U.S. Dist. LEXIS 83363, at *6 (D. Mass. May 12, 2020) ("The policy contained in section 1B1.13 serves as helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive.") (internal quote marks omitted).

Finally, if the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence should be modified. Those factors include: (1) the nature and circumstances of the offense,

6

and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a). In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence. United States v. Black, No. 1:11-cr-00083, 2020 U.S. Dist. LEXIS 142523, at *11 (S.D. Ind. Aug. 10, 2020); United States v. Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020); see also U.S.S.G. § 1B1.13(2) (stating that release should be denied if the defendant would pose "a danger to the safety of any other person or to the community").

**B.   Analysis**

    **1.   Exhaustion**

The parties agree that because defendant has not yet been received at a BOP facility he cannot ask the warden for release. (R. 222 at 4-6, R. 231 at 3 n.2.) Therefore, the statute's "exhaustion" requirement is no barrier to relief in court. See United States v. Johnson, No. 17-cr-162, 2020 U.S. Dist. LEXIS 93065, at *4 (E.D. Wis. May 28, 2020); see also Scott, 2020 U.S. Dist. LEXIS 85554, at *9-16 (indicating that this requirement is not jurisdictional and may in some cases be waived or excused).

    **2.   Extraordinary and Compelling Reasons**

On March 29, 2020, Josephine Taylor, the mother of defendant's eight-year-old

7

daughter, was murdered. Defendant indicates that prior to his arrest in this case, he was an involved and engaged parent to his daughter. While he separated from Ms. Taylor shortly after the girl was born, he remained an involved co-parent, picking her up after school every day and spending most afternoons and weekends with her.

Defendant indicates that his daughter is now in the care of Ms. Taylor's mother, Antoinette Taylor, but she cannot care for the girl on her own; she needs defendant's financial and logistical help. I agree that the death of Ms. Taylor constitutes an extraordinary and compelling reason under application note 1(C)(i). I see no requirement in the guideline or the statute that defendant also demonstrate that he is the only available care-giver for his daughter. Nor would such a requirement make sense; at the very least, the State would provide foster care for the child should no family member be able to take her in. I also find that defendant has demonstrated a compelling need for his assistance. Antoinette Taylor, even with help from other family members, is not in a position to provide long-term care, while maintaining her own employment, particularly given the challenges faced by parents and guardians during the COVID-19 pandemic.[2] (See R. 222 at 7-8.)

Indeed, the government does not argue otherwise in its response. It instead opposes modification based on danger to the public.

### 3. Danger/§ 3553(a) Factors

The government argues that defendant poses a danger to the public, relying primarily on the circumstances of the instant offenses, which involved large quantities of cocaine and

---

[2]I will not in this decision attempt to describe the emotional impact of these events on defendant's daughter; they are eloquently expressed in a letter from Antoinette Taylor. (R. 222-2.)

8

heroin, as well as firearms. (R. 231 at 5-6.) No one can seriously dispute that this was dangerous and harmful conduct. On the other hand, the record contains no indication of firearm use or other violent conduct, not in the present case or in defendant's prior matters. His record is, as indicated, limited to simple marijuana possession and CCW convictions, and he successfully completed a previous term of probation. (PSR ¶ 50.) Defendant also appears to have a solid release plan, including a stable home to return to and options for employment using the CDL he obtained.

As discussed at the original sentencing hearing, a prison term is necessary to provide just punishment for this conduct. However, defendant has already served a significant portion of his sentence; factoring in good time, he has less than 3 years remaining. While defendant filed his motion shortly after the original sentencing hearing, this is not a case in which a prisoner is seeking release after serving a mere fraction of his sentence. And, because defendant has already served a far longer term than in any of his previous cases,[3] reducing the prison sentence to time-served will still provide specific deterrence.

The government argues that a reduction would ignore the need for general deterrence. To be sure, releasing defendant now would result in a term less than Congress mandated in 18 U.S.C. § 924(c). But Congress also granted courts the authority to act in unusual and extraordinary circumstances, such as this one. And to the extent would-be drug traffickers pay attention to such matters, it is highly doubtful that the potential death of a child's care-giver and how 18 U.S.C. § 3582(c)(1)(A) might apply in that situation factors into the decision whether to break the law.

---

[3] His longest previous sentence was 5 months. (PSR ¶ 48.)

9

For the foregoing reasons, I will reduce the prison term to time-served. In order to ensure that the public is protected and that the sentence provides for sufficient punishment, I will increase the supervised release term from three years to five on each count. I will also add a condition of supervised release requiring that defendant comply with the conditions of location monitoring for a period of 365 days. During this time, defendant shall remain at his residence except for employment and other activities approved in advance by the supervising probation officer.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 222) is granted, as stated above. An amended judgment will issue forthwith.

Dated at Milwaukee, Wisconsin, this 24th day of September, 2020.

/s Lynn Adelman
LYNN ADELMAN
District Judge

10

Case 2:18-cr-00142-LA   Filed 09/24/20   Page 10 of 10   Document 249